Filed 2/13/26  P. v. Lee CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B340610 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. YA090448 |
| SHERMAN LEE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Altus W. Hudson, Judge.  Affirmed and remanded with instructions.

Jonathan Demson and Michael Reed, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

————————

Sherman Lee appeals the trial court's denial of his section 1172.6 petition for resentencing. In light of *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*), we remand and instruct the trial court to consider an amended petition if Lee files one within 30 days of the remand. Statutory citations are to the Penal Code.

Ronnie Hayes testified at the preliminary hearing that he was with Hoover Darnell Carter at the building where both Lee and Carter lived the morning of the shooting. Hayes testified Carter told him Lee had been threatening Carter. Hayes and Carter were walking together when Lee approached. Lee said, "Let's do this shit." Hayes left because he did not want to be part of what he assumed would be a fistfight. Hayes went to the building's kitchen. A man named Melvin later entered the kitchen saying Carter had been shot.

Police arrived to find Carter lying face up on the street with multiple gunshot wounds. Carter died in the hospital.

Lee's former girlfriend testified he called her after the shooting. When she asked him why he had done it, he told her, "Well, if you were there too, you wouldn't be talking to me right now."

Lee also called the manager of the building and told her "he was as angry – still angry as he was the day that it happened, that he did not have any regrets." Lee told the manager "he shot [Carter] in the knee first or his leg," and when Carter said he was crazy, Lee said, "You don't know how crazy I am," and proceeded to shoot him.

Fifty-four days after the shooting, on his 54th birthday, Lee turned himself in to the police. In an interview, Lee said Carter had stolen his girlfriend and was taunting him. Lee said on the

day of the shooting he "just couldn't take it anymore." Lee also stated, "It's not me. I'm not a killer. . . . They made me do it."

Pursuant to a plea bargain, Lee pleaded no contest to voluntary manslaughter and criminal threats. He also admitted a gun use enhancement. The trial court sentenced Lee to 21 years and eight months in prison.

In 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), which altered the rules of murder liability to ensure culpability more closely matched punishment. (*People v. Arellano* (2024) 16 Cal.5th 457, 472.) As part of this reform, the Legislature amended section 188 to prohibit imputing malice based solely on a defendant's participation in a crime. (§ 188, subd. (a)(3).) In effect, a defendant can no longer be convicted of murder under an aiding and abetting theory merely because a killing was a natural and probable consequence of another intended offense. (*People v. Gentile (*2020) 10 Cal.5th 830, 839.)

To provide retroactive relief, Senate Bill 1437 also established a resentencing process, now codified in section 1172.6. This statute permits individuals convicted of murder, attempted murder, or manslaughter under a theory of imputed malice to petition the sentencing court to vacate the conviction and seek resentencing. (§ 1172.6, subd. (a).)

Once the court receives such a petition, the section 1172.6 process unfolds in three distinct stages. (*Patton, supra,* 17 Cal.5th at p. 562.) At the first stage, a petitioner need only submit a facially sufficient petition that alleges the statutory prerequisites for relief. (*Ibid.*) If the petition is facially valid, the petitioner is entitled to the appointment of counsel, if requested, and the matter proceeds to the second stage. (*Ibid.*)

At the second stage, the trial court must determine whether the petitioner has made a prima facie showing of eligibility for relief.  (*Patton*, *supra*, 17 Cal.5th at p. 562.)  If the court finds the petitioners have met their burden of establishing a prima facie case, the court must then issue an order to show cause and proceed to the third stage: an evidentiary hearing at which the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioners remain guilty under current law.  (*Ibid*.)

This case concerns the second step.

Lee filed a petition under section 1172.6.  The court appointed him counsel, received briefing, and held a hearing on whether Lee made a prima facie showing.  The court ruled because the preliminary hearing transcript showed Lee was the perpetrator he was ineligible for relief.

*Patton* came out after the trial court determined Lee had not made a prima facie showing.  *Patton* makes clear that at the second stage a trial court may consider uncontroverted facts from the record of conviction.  (*Patton*, *supra*, 17 Cal.5th at p. 563–564.)  This includes an evaluation of preliminary hearing evidence to determine whether a still-valid theory of liability supported the conviction.  (*Ibid*.)  However, *Patton* also teaches that at the second stage petitioners have the opportunity to show why they are not ineligible, despite what might appear in preliminary hearing transcripts.  To meet the burden of establishing a prima facie case for relief, the petitioner must provide nonconclusory allegations that alert the court and prosecution to the issues to be decided at the evidentiary hearing.  (*Id*. at p. 567.)

Lee argues that because neither he nor the trial court had the benefit of *Patton*'s guidance at the time of his hearing, we should remand the case to allow him to make the type of showing described in *Patton*. Because we see no material difference between the facts in this case and those in *Patton*, we agree. While the prosecutor argues such a remand would be "an idle act," he also does not oppose such a remand. We therefore remand to allow Lee to provide nonconclusory allegations to support his claim of eligibility.

## DISPOSITION

We remand with instructions for the trial court to consider any amended allegations filed by Lee within 30 days of remand. We otherwise affirm the order.

WILEY, J.

We concur:

STRATTON, P. J.

VIRAMONTES, J.

5